In the Matter of the Application of GENERAL SILK IMPORTING COMPANY, INC., Appellant, to Compel Arbitration by GERSETA CORPORATION, Respondent.

First Department, July 1, 1921.

**Arbitration — contract for arbitration pursuant to Arbitration Law or rules of association enforcible — memorandum of sale construed not to provide for arbitration pursuant to rules of Silk Association of America.**

It is entirely competent for parties to submit a controversy to arbitration by formal submission, or to provide in their contract that any controversy arising thereunder shall be submitted to arbitration pursuant to the Arbitration Law or pursuant to the rules adopted by an association to which they belong.

A memorandum of purchase of raw silk executed by the respondent, who was not a member of the Silk Association of America, and the appellant, who was a member of said association, which had printed across its face, " Sales are governed by raw silk rules adopted by the Silk Association of America," does not constitute an agreement between the parties to relinquish all rights of appeal to the courts for redress under the contract and to submit to a determination by arbitration under the rules of said association any claim either of them might have for a breach of the contract.

APPEAL by the petitioner, General Silk Importing Company, Inc., from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of

the county of New York on the 11th day of May, 1921, denying the petitioner's motion for an order pursuant to the Arbitration Law directing the respondent to proceed forthwith with an arbitration before the arbitration committee of the Silk Association of America, pursuant to the provisions of a contract between the parties.

*Charles G. Keutgen* [*Gould & Wilkie*, attorneys], for the appellant.

*David Steckler* [*Emil Wietzner* with him on the brief; *Steckler & Wietzner*, attorneys], for the respondent.

*Austin, McLanahan & Merritt*, attorneys, for the Silk Association of America as *amici curiæ*.

*Lemuel Skidmore, Jr.* [*Putney, Twombly & Putney*, attorneys], for Stefano Berizzi & Company, Inc., and Mitsui & Company, Ltd., as *amici curiæ*.

LAUGHLIN, J.:

The controversy which appellant claims to be entitled to have arbitrated arises under a contract between it and the respondent evidenced by a memorandum of sale by the appellant to the respondent in writing bearing date of December 31, 1919, and a memorandum of purchase executed by the respondent to the appellant under the same date whereby appellant agreed to sell and the respondent agreed to purchase 100 bales of raw silk at a specified price and on specific terms. The memorandum of sale and memorandum of purchase each contained, following the description and quantity of goods and terms of sale, and in a separate space set off by lines running across the face of the contract but above the signature, the following: " Sales are governed by raw silk rules adopted by the Silk Association of America."

The petition shows that pursuant to the request of the purchaser, the seller delivered sixty-five bales of the goods during the months of June, July and August, 1920, and was ready, willing and able to deliver the remaining thirty-five bales, but that the purchaser refused to receive or pay for them, and denies that it is under any obligation so to do and refuses to submit the dispute to arbitration in accordance with the rules

First Department, July, 1921.                    [Vol. 198

of the Silk Association of America. It does not appear that the respondent is a member of the association or has any connection therewith; but it is to be inferred that the appellant is a member thereof for its president is one of the official arbitrators.. The rules of the Silk Association of America contain, among other things, rules and regulations to govern transactions between buyers and sellers of raw silk in the United States and they were approved by the board of managers of the association on the 22d of May, 1908, and were amended on the 9th of August, 1911. It is provided in the rules that they shall govern only where no special or specific contract exists between the buyer and the seller. They purport to regulate the rights and obligations of the buyer and seller arising under specified contracts for the purchase and sale of raw silk and what shall constitute delivery thereunder and rules are prescribed governing the construction of the provisions of such contracts with respect to the weight of the goods and the sizes of silk of various grades. The rules impose upon the buyer the duty of examining and testing silk received or tendered for delivery and prescribe the manner in which that shall be done and the rights and obligations of the buyer in respect thereto and the period within which notice of rejection shall be given and the duty of the seller with respect to making replacements. The rules also regulate other incidental rights and obligations of the buyer and seller. They then provide as follows: " All differences arising between Buyer and Seller must be submitted to the Arbitration Committee of the Silk Association of America."

The petition merely shows that the controversy arose under the contract; but an answer read in opposition to the motion shows that the precise point of difference between the parties is whether it was incumbent on the seller to tender delivery of the goods and whether it was not in default in failing so to do. The rules of the Silk Association of America provide that the. committee on arbitration, which consists of five members, shall have complete supervision of all matters of arbitration referred to the association and shall make rules and regulations for the conduct and disposition of all matters submitted in arbitration, and that, excepting as otherwise provided, it shall prescribe a form of agreement under which,

so far as practicable, the decision of the arbitrator or arbitrators shall become as effective as a judgment of the Supreme Court, and that the committee may provide other forms of arbitration not in conformity to the New York Code of Civil Procedure but which shall be morally binding, and that it shall prepare a list of not less than twenty qualified members of the association willing to act as arbitrators which shall be known as the official list of arbitrators of the Silk Association of America. They further provide that any matter in controversy may be referred by the disputants signing the form of agreement prescribed by the committee, together with a stipulation to the effect that they will abide by the decision of the arbitrator or arbitrators selected and that the disputants " may designate at their option either " a single arbitrator to act as sole arbitrator, or two who shall select a third official arbitrator, or the committee on arbitration or a quorum thereof. There was no submission to arbitration as prescribed by the rules and there was no designation of an arbitrator or arbitrators as therein provided.

Section 2 of the Arbitration Law (Consol. Laws, chap. 72; Laws of 1920, chap. 275)* provides as follows: " A provision in a written contract to settle by arbitration a controversy thereafter arising between the parties to the contract, or a submission hereafter entered into of an existing controversy to arbitration pursuant to title eight of chapter seventeen of the Code of Civil Procedure, shall be valid, enforcible and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." Section 3 provides that in case a party to such a contract shall fail, neglect or refuse to perform the same or to submit the controversy to arbitration, the aggrieved party may petition the Supreme Court or a judge thereof for an order directing that the arbitration proceed in the manner provided for in the contract or submission; and it is provided that if the making of the contract or the failure to comply therewith be not controverted, " the court, or the judge thereof, hearing such application, shall make an order directing the parties to proceed to arbitration in accordance with the terms of the contract or submission,"

---

* Since amd. by Laws of 1921, chap. 14.— [REP.

but that if the making of the contract or submission or the default " be in issue " the court or judge shall proceed summarily " to the trial thereof." It gives the right, if desired, to a jury trial of that issue, and on the rendition of the verdict in favor of the petitioner thereon provides that the court or judge shall make the order the same as if the making of the contract or submission had not been controverted. With respect to the arbitrators, section 4 provides that if the contract for arbitration or the submission provided for in section 2 contains a provision for naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if not so provided or by a failure of any party to avail himself of the method provided or for any other reason there should be " a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then, upon application by either party to the controversy, the Supreme Court, or a judge thereof, shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said contract or submission with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided, the arbitration shall be by a single arbitrator."

This litigation appears to be of more or less interest to the silk trade, and permission has been sought and granted to several other parties claiming to be interested to file briefs. We, however, are of opinion that there is no basis for alarm to the trade with respect to our determination herein. The Arbitration Law has been sustained as constitutional. (See *Matter of Berkovitz* v. *Arbib & Houlberg*, 230 N. Y. 261.) It is, therefore, entirely competent for the parties to such contracts to submit by a formal submission their controversy to arbitration, or for buyers and sellers to provide in their contract that any controversy arising thereunder shall be submitted to arbitration pursuant to the Arbitration Law or pursuant to such rules. The only point here is whether this contract shows with sufficient definiteness that the minds of the parties met on this point and that they intended to adopt the rules of the Silk Association of America, not merely to insure performance of the contract in accordance with those rules, but that in the event of a controversy it should be arbitrated

in accordance therewith.   The parties could have provided for such arbitration without setting forth all or any of the rules of the Silk Association of America if they had merely added to the provision incorporated in the contract to the effect that the *sales* are to be governed by those rules a provision that in the event of a controversy between the parties it should be arbitrated as provided by the rules, or if the contract had provided in any manner by appropriate phraseology that the reference to the rules was intended to include those providing for arbitration.   That, however, was not done; and since it does not appear that the respondent is a member of the association and it fairly appears that the appellant is, the contract should not be construed as constituting an agreement between the parties to relinquish all right to appeal to the courts for redress under the contract and to submit to the determination by arbitration under said rules of any claim either of them might have for a breach of the contract.   It follows, therefore, that the order is right and should be affirmed, with ten dollars costs and disbursements.

CLARKE, P. J., DOWLING, MERRELL and GREENBAUM, JJ., concur.

Order affirmed, with ten dollars costs and disbursements.