In the Matter of the Application of GERSETA CORPORATION, Respondent, for a Peremptory Mandamus Order against THE SILK ASSOCIATION OF AMERICA, Appellant.

*Mandamus — when peremptory order denied — rules of trade association requiring arbitration — right to suspend member for refusal to comply therewith — Arbitration Law.*

Appeal by The Silk Association of America from an order of the Supreme Court, entered in the New York county clerk's office on December 13, 1921, directing a peremptory mandamus order to the appellant to reinstate in membership the Gerseta Corporation.

Order reversed, with ten dollars costs and disbursements, and motion denied, with fifty dollars costs. No opinion. Present — Clarke, P. J., Dowling, Smith, Page and Greenbaum, JJ.; Smith and Greenbaum, JJ., concurring in reversal and voting for issuance of an alternative order.

SMITH, J.: The appellant, The Silk Association of America, is a corporation organized under the statutes providing for the incorporation of benevolent, charitable, scientific and missionary societies.* It is, however, now engaged and has been in the business of a trade association devoted to the silk business. Under the by-laws adopted by this corporation any person, firm or corporation engaged in the silk industry of the United States or allied thereto, may become a member of the association. Under the by-laws the members may be divided into different divisions. Division A is the Raw Silk Division, and Division D the Broad Silk Division. There are a number of other divisions to which a member may be assigned who has joined the association, or into which division he may be specifically elected under the by-laws of that division which they are allowed to make. These divisions elect their own chairman and executive committee, and the executive committee of each division is required to formulate general rules and regulations " for their government." Such rules, however, must be approved by the board of managers of The Silk Association. Those by-laws provide the machinery for optional arbitration of all members belonging to the association and the board of managers is given power to suspend or expel for cause any member who shall be guilty of any violation of the by-laws or rules of the association or for conduct prejudicial to the best interests of the association. Such suspension must be by a two-thirds vote of the board of managers. The General Silk Company, a corporation engaged in the silk business, made a contract with this respondent, the Gerseta Corporation. It does not appear whether these two corporations were specifically assigned to any division, but their business would require their assignment under the divisions made, of the General Silk Company to the Raw Silk Division, and of the Gerseta Corporation to the Broad Silk Division, as the Gerseta Corporation was only engaged in the manufacture of broad silks. Pursuant to the authority vested in the several divisions, the executive committee of the Raw Silk Division promulgated certain rules for the government of that division. These rules received the approval of the board of managers of The Silk Association, this appellant, as was required by the by-laws of that association. Under the rules thus promulgated by the Raw Silk Division, the arbitration of differences was compulsory. It does not appear that the Broad Silk Division had made any rules for its government, but the members of that division were still subject to the general by-laws of the association which provided for arbitration in case the parties to the controversy elect to arbitrate their differences or, in other words, optional arbitration as distinguished from compulsory arbitration as was required in the raw silk rules. Under the contract between the General Silk Company and the Gerseta Corporation a controversey arose. The contract under which these differences arose contained this clause: " Sales are governed by raw silk rules adopted by The Silk Association of America." The contention of the Gerseta Corporation was that this provision in the contract did not incorporate into the contract such part of the raw silk rules as provided for a compulsory arbitration, as that provision in the rules regulated the remedy for adjustment of differences and was no part of the rules regulating the sales themselves. The General Silk Company asserted the right of compulsory arbitration as included within the contract, by this reference thereto in the clause quoted and insisted upon arbitration. The Gerseta Company

---

* See Laws of 1848, chap. 319, as amd.— [REP.

refused to arbitrate. Upon complaint of the General Silk Company the matter was brought before the board of managers of the association and after several hearings the membership of the Gerseta Corporation in the association was suspended until it should consent to arbitrate its differences with the General Silk Company. Thereupon the Gerseta Corporation presented to the court a petition and asked for a peremptory writ of mandamus compelling the Silk Association to reinstate the corporation. The court below has granted a peremptory writ requiring such reinstatement, and it is from this final order that this appeal has been taken. This order for a peremptory writ, however, can only stand upon admission of all facts asserted in the answer to the writ. If any issue of fact be raised by that answer, the petitioner is entitled only to an alternative writ that that issue may be tried. One provision in the answer reads as follows: "The rules of the divisions of the Silk Association, including the Raw Silk Rules hereinafter referred to, have been adopted through the co-operation and suggestions of both buyers and sellers and provide for arbitration in accordance with the procedure of the Association, and practically all buyers and sellers of raw silk in this country are members of the Association. The practice of governing all sales of raw silk by these raw silk rules and these arbitration proceedings has become so universal that it is a trade custom. The volume of traffic transacted under these rules is about three hundred million dollars a year. It is therefore generally known in the trade that contracts taken, as were the contracts in this case, with the provision, ' Sales are governed by Raw Silk Rules adopted by the Silk Association of America," required arbitration in accordance with the provision of the Raw Silk Rules which reads: ' All differences arising between buyer and seller must be submitted to the Arbitration Committee of the Silk Association.' " Here, then, is an allegation that, "The practice of governing all sales of raw silk by these raw silk rules and these arbitration proceedings has become so universal that it is a trade custom," and further, that it was "generally known in the trade that contracts taken, as were the contracts in this case, with the provision, ' Sales are governed by Raw Silk Rules adopted by the Silk Association of America,' required arbitration in accordance with the provision of the Raw Silk Rules." The answer thus alleges a special meaning given in the trade to this provision that the "sales are governed by Raw Silk Rules adopted by the Silk Association of America." If it had become a custom in the trade that in all cases of the sale of raw silk the rules of the raw silk division should control, and, furthermore, if the clause used in the contract was generally understood in the trade to require arbitration under the raw silk rules, it seems clear to my mind that for a refusal to conform to the practice and custom under such a contract the association could lawfully suspend a member until a member conformed thereto. It is further alleged in the answer to the petition: "There is no doubt that the petitioner knew of the customs and practices relative to arbitration and of the fact that the contracts it signed containing the clause that it was to be governed by the raw silk rules, required it to arbitrate." Not only then is the custom alleged and the general significance given in the trade to this contract expression, but it is alleged that the Gerseta Corporation had full knowledge of these facts. To my mind this clearly raised an issue which the Special Term was not authorized to ignore. A peremptory writ was not authorized with this issue presented by the record. But the court was only authorized to grant an alternative writ under which this issue could be tried as a question of

fact. It is important to bear in mind that the controversy presented upon this appeal is not a controversy between the Gerseta Corporation and the General Silk Company, but is a controversy between the Gerseta Corporation and the association to which it belongs. In other words, the right of The Silk Association to suspend a member for refusing to perform a contract in accordance with the interpretation given to such contracts by the custom of the association is challenged. Power is given to the board of managers in the by-laws of the association to devise and carry into execution such measures as they deem proper and expedient to promote the objects of the association and to best protect the interests and welfare of the members. By section 9 of these by-laws a member may be suspended for cause such as a violation of any of the by-laws of the association or for conduct prejudicial to the best interests of the corporation. It is further provided that the committee on complaints shall hear and determine any proper charge against a member of the association, of fraudulent breach of contract in which he is a principal, or of willful wrong conduct in any mercantile transaction, or of any violation of the by-laws or rules of the association, or of violation of commercial usage or of other misconduct, in any case which has not been referred by mutual agreement to the committee on arbitration. It is stated that nearly all persons engaged in the silk business are members of this association, so that the interpretation and custom established within the association becomes a commercial usage, the violation of which constitutes an offense of which complaint may be made to the association and also misconduct for which the board of managers are authorized to suspend a member. It is unnecessary here to decide whether the courts will compel arbitration in case either party refuses to submit to arbitration under the contract as above stated. It was held in a proceeding between the Gerseta Corporation and The Silk Association of America (*Matter of General Silk Importing Co., Inc.*, 198 App. Div. 16) that a provision that *sales* were to be governed by the raw silk rules of the association did not include the rule of compulsory arbitration which is a part of the rules of the Raw Silk Division. Whether joint membership in The Silk Association or even joint membership in the Raw Silk Division would obligate the Gerseta Corporation to submit to arbitration under the arbitration statute* either by reason of such joint membership or by reason of this clause in the contract making sales subject to the rules of the Raw Silk Division is a question that will arise upon an appeal from an order requiring or refusing arbitration made upon an application to compel a submission thereto. The Gerseta Corporation was not a member of the Raw Silk Division, but of the Broad Silk Division. In our decision reported in 198 Appellate Division, the by-laws of the association were not fully set forth and it did not there appear that under those by-laws each division was authorized to make rules for its government, nor did it appear in that case as here appears by the answer of The Silk Association, that the general custom within the association was to arbitrate all differences between members of the association in the sale and purchase of raw silk in accordance with the rules of the Raw Silk Division, or that the general interpretation of the clause in the contract providing that sales are to be governed by the raw silk rules included the rule as to compulsory arbitration as well as other provisions of those rules. Under the answer, in this record, an issue of fact was raised upon the question whether under such a contract the obligation

* See Arbitration Law, as amd. by Laws of 1921, chap. 14.— [REP.

to arbitrate was generally recognized within the association. If such be the fact, I am of the opinion that the association was permitted to insist upon compliance with the contract as it was customarily understood, and the refusal of any party so to comply was proper cause for the suspension granted in this case, as conduct prejudicial to the best interest of the association. The peremptory order, therefore, should be reversed, with ten dollars costs and disbursements, and an alternative order issued upon which the issue of fact thus made can be tried. Greenbaum, J., concurs.