UNIAO DE TRANSPORTADORES PARA IMPORTACAO E COMERCIO, LTDA. v. COMPANHIA DE NAVEGACAO CARREGADORES ACOREANOS.

No. 18778.

United States District Court
E. D. New York.

May 17, 1949.

Reid, Cunningham & Freehill, New York City, for respondent.

Bigham, Englar, Jones & Houston, New York City, for libelant.

INCH, Chief Judge.

This is a motion by respondent for an order granting a stay of the trial of the above admiralty action until arbitration has taken place.

The question presented is both interesting and important. Counsel for libelant states that there are no decisions supporting a similar arbitration agreement under the circumstances here. On the other hand, I have been unable to find any case which could be a precedent for denying the stay requested.

On April 1, 1948, libelant filed its libel in this Court, alleging, in substance, that on November 3, 1947, it entered into a contract with respondent whereby certain merchandise was to be transported from New York, on deck, to a port in Portugal. That the merchandise was damaged, etc. when delivered, and libelant asks for a judgment in the amount of such damage sustained.

On December 13, 1948, respondent answered, denying liability and setting forth as a First Defense, the following:

"Twelfth: That the said bill of lading contained, among others, the following provisions:

"(24) In case of dispute between the parties relating to the present contract, the matter in dispute to be submitted in Lisbon to two arbitrators chosen, each by one of the parties, and in case the two arbitrators should be unable to come to an agreement, they to choose a third arbitrator, and the decision of the majority to be considered by the parties hereto as final and without appeal".

Both the libelant and respondent are corporations organized and existing under the laws of Portugal. Libelant alleges that its office and place of business is the City of Lisbon, Republic of Portugal. The above contract in question, therefore, was made between two corporations of Portugal. This arbitration clause, in dispute, relates to arbitration to be had in the City of Lisbon, Portugal, where libelant has its place of business.

Libelant asserts that the shipment in question is governed solely by the United States Carriage of Goods by Sea Act, 46 U.S.C.A. §§ 1300–1315. This Act was passed in 1936. It would not seem to have applied to this shipment because of the goods being carried "on deck", see Section 1(c). However, respondent, in its bill of lading, specifically provides as follows: "This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April 16, 1936, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the carrier of any of its rights or immunities or an increase of any of its responsibilities under said Act".

■ Accordingly, whether or not the said Statute did apply, there is authority for the parties nevertheless, making it a part of their contract. Waterman S. S. Corp. v. United States Smelting, Refining & Mining Co., 5 Cir., 155 F.2d 687, 691, certiorari de-

nied 329 U.S. 761, 67 S.Ct. 115, 91 L.Ed. 656, and libelant asserts the parties have done so. I shall so consider it.

Libelant, however, then proceeds to claim that the law in regard to "arbitration" is inconsistent with the provisions of this Carriage of Goods by Sea Act, and that, therefore, this defense now urged by respondent has no place in this controversy.

This Arbitration Act first became a law in 1925, substantially eleven years before the Carriage of Goods by Sea Act, but one need not consider these dates for we find that on July 30, 1947, c. 392, § 1, 61 Stat. 669, eleven years after the 1936 Act, the Congress re-enacted into positive law the Arbitration Act, Title 9 U.S.C.A. § 1, Cumulative Annual Pocket Part, 1948, which Act distinctly contains Section 2 of the earlier Act, entitled: "Validity, irrevocability, and enforcement of agreements to arbitrate": "A written provision in any maritime transaction or contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction * * * shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. July 30, 1947, c. 392, § 1, 61 Stat. 669 [9 U.S.C.A. § 2]"; and also Section 3, "Stay of proceedings where issue therein referable to arbitration": "If any suit * * * be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had * * *". July 30, 1947.

■ The Carriage of Goods by Sea Act, Title 46 U.S.C.A. § 1300, became effective in 1936. The purpose of this Act has been held to regulate rights and liabilities between carriers and cargo interests in an attempt to create international uniformity. Lyons-Magnus v. American Hawaiian S. S. Co., D.C., 41 F.Supp. 575; The Asturias,

584

D.C., 40 F.Supp. 168, affirmed Wessels v. The Asturias, 2 Cir., 126 F.2d 999.

It seems reasonable to me that if Congress in 1947, thought ·that the Carriage of Goods by Sea Act of 1936 affected or forbade any provisions in the Arbitration Act of 1947, it would and could have plainly avoided any such confusion. I am unable to find in the Carriage of Goods by Sea Act any reason or statement forbidding such parties to voluntarily agree to take advantage by arbitration and to arbitrate their controversy rather than be compelled to have the delay and expense of a trial. Apparently these two corporations, both of Portugal, agreed to arbitrate their controversy in Lisbon, where libelant had its office.

The real trouble appears to be in the reluctance of Federal Courts to yield any of its jurisdiction, directly or indirectly. There are authorities prior to 1947 indicating this view, The Ciano, D.C.1944, 58 F. Supp. 65; Petition of Pahlberg, D.C.1942, 43 F.Supp. 761. I think that the proper view of this Arbitration Act, as originally enacted in 1925, and later enacted into positive law on July 30, 1947, is found in the opinion of the Court of Appeals of this, the Second Circuit, Kulukundis Shipping Co. v. Amtorg Trading Corp., 1942, 126 F.2d 978.

█ Of course, "an arbitration agreement may be repudiated, waived or abandoned by one or both of the parties", but it said, even in such case, where one party seeks to do so, the other has the right to plead the "agreement to arbitrate" as a defense. Such stay does not oust the Court of jurisdiction, but provides for maintaining its jurisdiction. American Sugar Refining Co. v. The Anaconda et al., 5 Cir., 1943, 138 F.2d 765, 767.

It is clear, therefore, in view of the authorities, some of which I have mentioned, that "arbitration" in proper cases is to be desired.

█ It may well be that there may be other cases where on other facts and circumstances, the court would not, in the administration of equity and justice, feel that it must be rigidly bound to compel arbitration. I limit this decision to the facts of this particular case which show that two corporations, both of Portugal, agreed to arbitrate their differences in Lisbon where libelant had its principal office.

Accordingly, the motion is granted to stay the suit pending such arbitration. Settle order.