### FOX et al. v. THE GIUSEPPE MAZZINI et al.

#### No. 19978.

United States District Court
E. D. New York.

Feb. 13, 1953.

Bigham, Englar, Jones & Houston, New York City, Alfred Ogden, New York City, for libellants.

Burlingham, Hupper & Kennedy, New York City, Norman M. Barron and Hervey C. Allen, Jr., New York City, for respondents.

GALSTON, District Judge.

The libel was filed December 12, 1952. It appears that the libellants are copartners doing business under the name C. B. Fox Company, with an office in New Orleans, Louisiana. The respondent Garibaldi, Societa Cooperativa di Navigazione a Resp. Lta. is a corporation existing under the laws of the Kingdom of Italy, with an office and principal place of business in Genoa, Italy. It is alleged to own a number

of vessels for hire on the high seas, including the S.S. Giuseppe Mazzini.

The libel alleges that on December 20, 1951, at London, England, the respondent and libellants entered into a contract, a charter party, whereby the libellants agreed to hire the S.S. Giuseppe Mazzini for the carriage of a complete cargo of calcium ammonium nitrate from Bremen or Bremerhaven to Charleston, S. C. "and/or" Braithwaite, Louisiana. Further it is alleged that on January 17, 1952, pursuant to the charter party, the Osterreicherische Sticksoffwerke Aktienges shipped and placed on board the vessel, then lying in the port of Bremen, a cargo of ammonium nitrate and bituminated paper bags for refilling, all in good order and condition to be transported to Braithwaite in like good order and condition as when shipped "unto the order of Union Bank of Switzerland, in accordance with the valid terms of the charter party". It is then alleged that the vessel sailed from Bremen, arrived at Braithwaite, but failed to deliver the merchandise in the condition in which it was when shipped. On the contrary, it was damaged by reason of contact with sea water, etc. The libellants, therefore, seek to recover from the respondents the sum of $13,500 for the damages sustained.

On January 8, 1953, the respondents filed a motion for an order to stay the trial until an arbitration had been had of the issues involved in accordance with the terms of the agreement of the charter party. A copy of the charter party is annexed to the affidavits supporting the notice of motion, and it appears that the charter party was entered into in London, on December 20, 1951, and that the respondent, Garibaldi, Societa Cooperativa di Navigazione a Resp. Lta. is noted as the owners of the Giuseppe Mazzini, and Messrs. C. B. Fox Company, the libellants, are named as charterers. The undertaking was that the vessel proceed to Bremen or Bremerhaven, at charterers' option, and on or about January 7, 1952 load the cargo heretofore described, and having been so loaded proceed to Charleston or Braithwaite. The charter party was executed by authorized agents of the owners and authorized agents of the libellants. The all-significant clause on which the motion for a stay is based is Clause 23 of the charter party, which reads as follows: "Arbitration to be settled in London."

The libellants, opposing the motion, have filed an affidavit of Alfred Ogden, associated with the proctors for the libellants, in which he urges that the sole question for decision is whether the contract, the charter party, contains a clear, valid and enforceable agreement to arbitrate.

The motion is made pursuant to the provisions of 9 U.S.C.A. § 3. That section reads as follows:

> "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

See also 9 U.S.C.A. § 2.

█ It is settled that the aforesaid Section 3 applies not only to contracts for arbitration in this country, but may also apply to those to be held in a foreign country, Uniao De Transportadores, etc. v. Companhia, etc., Acoreanos, D.C., 84 F. Supp. 582; Charles Pfizer & Co., Inc. v. 912 Bags of Tartar, etc., D.C., 40 F.Supp. 123.

The plaintiff's position is that the arbitration clause of the charter is "vague and nebulous" and therefore does not constitute an agreement to arbitrate.

█ It is, of course, true that there is nothing said therein about the number of arbitrators, nor how they are to be appointed. On the other hand, it would seem that since the contract between the parties was executed in London, the interpretation

to be given to the arbitration clause is to be that of British law rather than the law of this country. It is for that reason that such cases as Canadian Gulf Line Ltd. v. Continental Grain Co., 2 Cir., 98 F.2d 711; Western Vegetable Oils Co., Inc. v. Southern Cotton Oil Co., 9 Cir., 141 F.2d 235; and General Silk Importing Company, Inc. v. Gerseta Corporation, 198 App.Div. 16, 189 N.Y.S. 391, are not helpful.

In the absence of any indication of a contrary intention, the contract is to be construed according to the law of the place where it was made, and this rule applies to charter parties also, Yone Suzuki v. Central Argentine R. Co., 2 Cir., 27 F.2d 795, certiorari denied, 278 U.S. 652, 49 S.Ct. 178, 73 L.Ed. 563. See also Mazza v. J. G. White Engineering Co., D.C., 274 F. 990.

It is true that counsel have been unable to furnish any case, either English or American, dealing with an arbitration clause phrased in the language of Clause 23. However, our courts and the English courts have held that an arbitration clause is to be given the broadest possible interpretation as to subject matter, In re Pahlberg Petition, 2 Cir., 131 F.2d 968, and Heyman v. Darwins, Ltd. (1942) App.Cas. 356.

The British Arbitration Act of 1889 (52 and 53 Vict., c. 49) provides:

"(a) If no other mode of reference is provided, the reference shall be to a single arbitrator."

See also The Fredensbro, D.C., 18 F.2d 983; Danielsen v. Entre Rios Rys. Co., Ltd., D.C., 22 F.2d 326; and International Refugee Organization v. Republic Steamship Corporation, D.C., 93 F.Supp. 798.

It is also urged by the libellants that even though the law governing the validity and interpretation of a contract is that of the country in which the contract is executed, nevertheless when performance is to be had in another country, the presumed intention of the parties is that the law of such other country shall prevail.

But in the charter party the place of performance is not restricted to the United States. The contract was entered into in England, and certainly part performance was to be had in Germany. It would be just as reasonable to argue that the law of Germany, according to the defendants' view, was to apply, as well as the place of delivery of the cargo. But there is certainly nothing in the charter party from which it can be determined that the intention of the parties contemplated anything other than British law.

The motion is granted. Settle order on notice.